1    NANCY L. FINEMAN (Cal. SBN 124870)
2    nfineman@cpmlegal.com
     MATTHEW K. EDLING (Cal. SBN 250940)
3    medling@cpmlegal.com
     BRIAN M. SCHNARR (Cal. SBN 275587)
4    bscnahrr@cpmlegal.com
5    JOYCE CHANG (Cal. SBN 300780)
     jchang@cpmlegal.com
6    **COTCHETT, PITRE & McCARTHY, LLP**
7    San Francisco Airport Office Center
     840 Malcolm Road, Suite 200
8    Burlingame, CA 94010
9    Telephone: (650) 697-6000
     Facsimile: (650) 697-0577
10

11   DON A. ERNST (#65726)
12   CHRISTOPHER D. EDGINGTON (#169682)
     TAYLOR ERNST (#277901)
13   **ERNST LAW GROUP**
14   1020 Palm Street
     San Luis Obispo, CA 93401
15   Telephone: (805) 541-0300
16   Fax: (805) 541-5168

17                  **UNITED STATES DISTRICT COURT**
18
               **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
19

20
21   LISA DEUTSCH and JAMIE              | **Case No. 2:15-cv-1978**
     DEUTSCH, individually and on behalf of
22   all others similarly situated,        | <u>CLASS ACTION</u>
                      Plaintiffs,
23                                         | **COMPLAINT FOR:**
24          v.
25                                         | 1) VIOLATION OF THE
     LUMBER LIQUIDATORS HOLDINGS,          |    MAGNUSON-MOSS
26   INC., a Delaware Corporation; LUMBER  |    WARRANTY
     LIQUIDATORS, INC., a Delaware         |    ACT, 15 U.S.C. §§ 2301, *ET SEQ;*
27   Corporation,
                      Defendants.          | 2) VIOLATION OF CALIFORNIA
28                                         |    BUSINESS AND PROFESSIONS

**CLASS ACTION COMPLAINT**

CODE § 17200, *ET SEQ;*

3)  VIOLATION OF CALIFORNIA
    BUSINESS AND PROFESSIONS
    CODE § 17500, *ET SEQ.*

4)  VIOLATION OF CALIFORNIA
    CONSUMER LEGAL REMEDIES
    ACT, CAL. CIV. CODE § 1750 *ET
    SEQ.*

5)  BREACH OF EXPRESS
    WARRANTY, CAL. UNIFORM
    COM. CODE § 2313

6)  PUBLIC NUISANCE

7)  DECLARATORY RELIEF

**JURY TRIAL DEMANDED**

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**CLASS ACTION COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ............................................................................... 1

II.     JURISDICTION AND VENUE ....................................................... 3

III.    PARTIES........................................................................................... 4

      A.    Plaintiffs ................................................................................. 4

      B.    Defendants.............................................................................. 5

IV.    FACTUAL ALLEGATIONS .......................................................... 6

      A.    Background on Lumber Liquidators ...................................... 6

      B.    The Chemical Characteristics of Formaldehyde and its Use in Wood Flooring.................................................................................. 8

      C.    Lumber Liquidators' Importation, Marketing and Sale of Toxic Laminated Wood Flooring ...................................................... 9

V.      CLASS ACTION ALLEGATIONS ............................................... 14

VI.    STATUTE OF LIMITATIONS ....................................................... 17

      A.    Fraudulent Concealment Tolling............................................ 17

      B.    Estoppel ................................................................................. 17

      C.    Discovery Rule ...................................................................... 17

VII.   CAUSES OF ACTION .................................................................... 18

      FIRST CAUSE OF ACTION
      VIOLATION OF THE MAGNUSON-MOSS WARRANTY........................ 18

      SECOND CAUSE OF ACTION
      VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS
      CODE § 17200, *ET SEQ;* ................................................................ 19

THIRD CAUSE OF ACTION
VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS
CODE § 17500, ET SEQ. .........................................................................22

FOURTH CAUSE OF ACTION
VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES
ACT, CAL. CIV. CODE § 1750 *ET SEQ.* ........................................................23

FIFTH CAUSE OF ACTION
BREACH OF EXPRESS WARRANTY, CAL. UNIFORM COM.
CODE § 2313.............................................................................................25

SIXTH CAUSE OF ACTION
PUBLIC NUISANCE ...................................................................................26

SEVETH CAUSE OF ACTION
DECLARATORY RELIEF ............................................................................28

PRAYER FOR RELIEF ..................................................................................29

DEMAND FOR JURY TRIAL .........................................................................30

1.      Plaintiffs Lisa Deutsch and James Deutsch ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following based upon information and belief and the investigation of their undersigned counsel against Defendants Lumber Liquidators Holdings, Inc. and Lumber Liquidators, Inc., (together "Lumber Liquidators").

# I.

## INTRODUCTION

2.      This consumer protection class action arises out of the intentional conduct of Lumber Liquidators, a company that has placed the health and safety of thousands of homeowners in jeopardy in return for maximizing corporate profit. This story of corporate greed involves a misleading marketing campaign that is aimed at increasing the sale of defective laminate wood flooring manufactured in China.  This laminate wood flooring is prepared with excessive levels of urea-formaldehyde ("UF") resin.  UF resin is used as an adhesive or binding agent for wood fibers that are pressed together to form products such as particle board, hardwood, plywood, or multi-density fiberboard.  Formaldehyde is then emitted (or "off gassed") in amounts that violate safety standards set by the U.S. Occupational Safety & Health Administration ("OSHA"), California Air Resources Board ("CARB"), and the European Union ("EU").

3.      Several of the products lines marketed and sold by Lumber Liquidators are manufactured at mills located in China.  China produces and consumed one-third of the world's total formaldehyde output, and over 65% of Chinese formaldehyde output is used to produce resins that are used in wood products.  Reports and investigations have discovered that the vast majority of these products contain extremely high levels of formaldehyde in its resin.

4.      Formaldehyde is a dangerous industrial pollutant that has been categorized by the Department of Health and Human Services, the National Toxicology Program, the U.S. Environmental Protection Agency, and the

International Agency for Research on Cancer as known human carcinogen, leading to an increased risk of leukemia and brain cancer as compared with the general population. Formaldehyde is also associated with countless other adverse medical conditions, including asthma and rheumatoid arthritis. Exposure to formaldehyde through these emissions can cause burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain, and nausea. In 1992, the Air Resources Board deemed the substance as a toxic air contaminant ("TAC").

5.     California state laws require CARB to monitor and reduce human exposure to formaldehyde. According to a 2007 CARB presentation, there is sufficient evidence to conclude that formaldehyde is linked to increased risk of nasopharyngeal cancers. In response, California's Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products was approved in 2008 and implemented in 2009. *See* Cal. Code Regs. Tit. 17 §§ 93120 – 93120.12 ("CARB Regulations"). Those standards were adopted in 2010 by the U.S. federal government in the Formaldehyde Standards for Composite-Wood Products Act, 15 U.S.C. § 2697.

6.     For a period of at least two years, Lumber Liquidators has been fully aware that its laminated wood flooring products manufactured at mills in China were releasing highly toxic levels of formaldehyde after installation. Despite this knowledge, however, Lumber Liquidators, continued to market and sell these dangerous products to hundreds of thousands of consumers.

7.     Lumber Liquidators widely advertised that its products, inclusive of the laminated wood flooring manufactured in China, complied with the strict formaldehyde standards set by the OSHA, CARB, the EU, and various other state and federal regulatory agencies. However, these representations made in its marketing materials were false. Lumber Liquidators' products emit levels of formaldehyde that are often multiple times the maximum permissible limits set by

these regulatory agencies and have caused (and continue to cause) significant health problems and monetary losses.

8.    Lumber Liquidators' decision to use non-compliant laminate wood flooring manufactured in China is based solely on its desire to maximize corporate profit.  The laminate wood used by Lumber Liquidators is approximately 10 to 15 percent cheaper than a CARB 2 compliant equivalent product.

9.    Plaintiffs assert claims individually and on behalf of the other members of the proposed Class for violations of the Magnuson-Moss Warranty Act; breaches of express warranties; and violations of California's Consumer Protection/Deceptive Practices acts arising from Lumber Liquidators' scheme to import and sell the Chinese-made laminate wood flooring products.

10.    Furthermore, Lumber Liquidators' was aware that it was marketing and selling products to hundreds of thousands of customers in California that it knew would adversely affect the public health of the community.  As a result, Lumber Liquidators has knowing created a public nuisance that it should be required to abate.

## II.

## JURISDICTION AND VENUE

11.    This Court has Jurisdiction over this action pursuant to 28 U.S.C. Section § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $5 million and the potential class members number over one hundred.

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

13.    This Court also has subject matter jurisdiction over the state law claims in this action pursuant to 28 USC § 1367(a) for matters arising out of the same controversy under Article III of the U.S. Constitution.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c) and (d) because during the relevant time period, Defendants transacted business, were found, and/or had agents in this District and throughout the United States, a substantial portion of the conduct discussed below has been carried out in this District, and a substantial part of the offenses complained of giving rise to the claim occurred in this District.

15.     The State of California is an appropriate forum for the resolution of this controversy as the adverse effects of Lumber Liquidator misconduct has had a proportionally greater effect on its residents than other states.  California has more Lumber Liquidator retail stores than any other state, and since 2010, Lumber Liquidators has opened more new stores in the California market than the next two states combined.

16.     Lumber Liquidators' comparatively large operations in California match the heightened demand for its products.  A study conducted in Joint Center for Housing Studies by Harvard University in 2015 show four California cities, Los Angeles, Riverside, San Francisco and San Jose, account for a significant percentage of the home improvement and repair spending nationwide, and have been listed among the top 25 major U.S. cities with the highest growing remodeling markets.

17.     According to the United States Census, in 2014 more products are imported into California from China than in any other state, amounting to 34.1% of the national total.

### III.
### PARTIES

**A. Plaintiffs**

18.     Plaintiff Lisa Duetsch is a resident of San Luis Obispo County, California.  On or around March 1, 2014, Plaintiff Duetsch purchased 12mm St.

James Laminate flooring directly from Lumber Liquidators and installed it in his home.

19.     Plaintiff Jamie Deutsch is a resident of San Luis Obispo County, California.  On or around March 1, 2014, Plaintiff Duetsch purchased 12mm St. James Laminate flooring directly from Lumber Liquidators and installed it in her home.

20.     The package provided by Lumber Liquidators to Plaintiffs came with the following product information, including a representation that the product was "Compliant for Formaldehyde" and met or exceeded CARB phase 2 standards:



### B. Defendants

21.     Lumber Liquidators Holdings, Inc. is a Delaware Corporation. Its headquarters is located at 3000 John Deer Road, Toano, Virginia, 23168.  As of the end of 2014, it operates over 350 stores in 46 states.

22.     Lumber Liquidators, Inc. is a Delaware Corporation and wholly-owned subsidiary of Lumber Liquidator Holding, Inc. with its principal headquarters in Toana, Virginia.  The Company specializes in providing flooring of all types including wood flooring, laminate flooring, cork flooring, bamboo

floor products, vinyl plank flooring, flooring accessories and other hardwood products.

23.     Each of the above referenced Lumber Liquidator entities are referred to together herein as "Defendant" or "Lumber Liquidators."

## IV.

## FACTUAL ALLEGATIONS

**A.    Background on Lumber Liquidators**

24.     On the surface Lumber Liquidators appears to be a classic American success story.  The company was founded in 1994 by Tom Sullivan, who began purchasing and selling extra wood out of the back of a trucking yard in Stoughton, Massachusetts.  By 1996, the company had focused its business on hardwood flooring, and opened its first store in West Roxbury, Massachusetts.  Within a matter of months, Lumber Liquidator stores were opening in locations throughout New England.  The company moved its headquarters to Colonial Heights, Virginia in 1999, and then again to its current location of Toana, Virginia in 2004.  It has since grown to become the largest specialty retailer of hardwood flooring in North America.

25.     Lumber Liquidators' business model is built on its position as a wholesaler, whereby it negotiates directly with lumber mills and eliminates the middleman.  This arrangement allows Lumber Liquidators to offer cheaper prices than its retail competitors.

26.     In 2012, Forbes magazine listed Lumber Liquidators as one of its Best Small Companies.  From 2011 to 2013, the company saw its stock price jump over one hundred dollars, amounting to over 1200% in gains.  In 2014, Lumber Liquidators CEO and president, Robert M. Lynch, commented that his company's financial results set "record highs for net sales and operating margin in the fourth quarter as we continued to gain share in a highly fragmented market."

27.     Presently, Lumber Liquidators employs over 1,700 employees. Recording over a billion dollars in net sales revenue and achieving market cap of approximately $3 billion, Lumber Liquidators has shown increases in year over year revenue over the past three years, posting up 29.1% earnings per share growth rate over the past five years compared to 11.2% for the S&P 500 for the same period.  For the most recent fiscal year Lumber Liquidators reported an expected net income of over $77 million.

28.     Lumber Liquidators maintains several major operation hubs, including over 350 store locations nationwide.  It sources its wood from an estimated 110 mills internationally and domestically.  It has two major warehousing facilities in the Hampton Roads area of Virginia and Pomona, California.  Lumber Liquidators operates thirty-seven (37) retail outlets in California, more than in any other state.

29.     The portfolio of products sold by Lumber Liquidators mostly composed of its own brands, including product lines such as Bellawood, Builder's Pride, Virginia Mill Works, Schon, Morning Star Bamboo and Dream Home brands.  The product and quality of the products vary, and have significant ranges. There is an estimated 100 million square feet of the company's cheaper laminate wood flooring installed in American homes.  Much of Lumber Liquidators' products are made of cheaper laminate materials that are sourced from China.

30.     According to a recently filed 10-K, one of Lumber Liquidators' risk factors is its "ability to obtain products from abroad and the operations of many of our international suppliers are subject to risks that are beyond our control and that could harm our operations."  The company explains that its dependence on these international suppliers are contingent on them agreeing "to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, we do not control our suppliers.  Accordingly, despite our continued investment in quality control, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible

manner." However, and unbeknownst to Lumber Liquidators' consumers, the UF resin used in the Chinese factory process has created health risks and exposure to heightened levels of formaldehyde.

**B.     The Chemical Characteristics of Formaldehyde and its Use in Wood Flooring**

31.     The substance known as formaldehyde is a gas at room temperature and is characterized by sharp, pungent odors. Formaldehyde is formed when an acidified compound is oxidized with methanol in a chemical reaction. Formaldehyde belongs to a group of aldehydes used in wide-ranging industrial applications and is produced worldwide.

32.     Formaldehyde is categorized as a known human carcinogen by the United States National Toxicology Program and the International Agency for Research on Cancer, and can lead to an increased risk of cancer and other physical ailments including respiratory and epidermal health problems. In fact formaldehyde is toxic to all animals regardless of the form.

33.     According to the U.S. Occupational Safety & Health Administration ("OSHA"):

> [t]he concentration of formaldehyde that is immediately dangerous to life and health is 100 ppm. Concentrations above 50 ppm can cause severe pulmonary reactions within minutes. These include pulmonary edema, pneumonia, and bronchial irritation which can result in death. Concentrations above 5 ppm readily cause lower airway irritation characterized by cough, chest tightness and wheezing.

> Long term exposure has been linked to an increased risk of cancer of the nose and accessory sinuses, nasopharyngeal and oropharyngeal cancer, and lung cancer in humans.

34.     Formaldehyde is a naturally-occurring organic compound with the formula $CH_2O$ or $HCHO$. Its organic structure lends itself to be highly reactive and therefore can exist in a variety of different forms as a building block for other

substances.  One such application of formaldehyde is in its use as a polymer, synthetic plastics, for adhesive applications to plywood and carpeting.

35.     Some reports, including one conducted by the National Institute for Occupational Safety and Health in 2004 on over 11,000 textile workers, showed an association between duration of exposure to formaldehyde and increased risk of leukemia.

36.     When wood products are manufactured, layers of wood fibers or particles are pressed together and sealed with a UF resin.  UF resin is considered to be highly water-soluble.  Pressed wood products, such as hardwood, plywood, and particle board, are considered to be major sources of indoor formaldehyde emissions.

37.     The CARB Regulations requires two-phase testing to ensure that the wood products containing formaldehyde do not exceed its strict emission standards.  Known as CARB Phase 2, the law requires companies that make flooring to label their flooring products as having been made with certified compliant composite wood products.  Gaseous formaldehyde is normally present in air, indoor or outdoor, at less than 0.03 parts of formaldehyde per million parts of air as reported by the U.S. Consumer Product Safety Commission in 1997.

**C.     Lumber Liquidators' Importation, Marketing and Sale of Toxic Laminated Wood Flooring**

38.     According to tests conducted by independent laboratories, including test that were recently highlighted by CBS on its news program "60 Minutes," Lumber Liquidators' laminate wood flooring dangerously exceeded the allowable limits of CARB's Composite Wood Products Regulation rules.

39.     The CBS report found that samples of Lumber Liquidators Chinese-made laminate flooring products had anywhere from six to twenty times the legal limit of allowable formaldehyde.  These results were the byproduct of testing

performed at CBS' direction by two independent certified laboratories:  HPVA and Benchmark International.

40.      The laboratories performed two tests:  First the labs tested the products for CARB 2 compliance.  CARB's emissions standards regulate the formaldehyde emissions from composite wood products used in finished goods such as laminate flooring.  The underlying medium density fiberboard, or "core" of the product must pass CARB's emissions standards in order for the product to be sold legally in California.  CARB publishes its official methodology for analyzing formaldehyde emissions in finished goods - or "SOP" (Standard Operating Procedure for testing finished goods) on its website.  Prior to performing the first set of tests, CBS' 60 Minutes confirmed with CARB officials that this "deconstructive test" is an approved method for test finished goods for CARB formaldehyde emissions compliance.  The labs then tested Lumber Liquidators' Chinese-made laminated wood floor products, using the method that CARB developed and uses.  Thirty of the thirty-one (31) samples tested contained levels of formaldehyde emissions that exceed the limits set by CARB.  It is illegal to sell laminates in California which exceed the formaldehyde emissions limits set by CARB.  The labs found that the highest-emitting Lumber Liquidators product tested released 13 times more formaldehyde than the CARB Phase 2 limits.

41.      The second test conducted by the certified labs was the California Department of Public Health 01350 test, which measures the concentration of formaldehyde emissions coming off the laminates into the air of a typical home. The highest-emitting Lumber Liquidators sample that the labs tested emitted a concentration of formaldehyde into the air of a typical home that the U.S. Environmental Protection Agency has cited as "polluted indoor conditions."

42.      The materials chosen for CBS' test included Lumber Liquidators' Chinese-made laminate floor samples that were purchased from stores located in California, Virginia, Florida, Texas, Illinois and New York.  CBS also applied the

same CARB testing to flooring products offered by Lowes, HomeDepot, and even several non-Chinese-made laminate wood flooring products sold by Lumber Liquidators. Every single sample of Chinese-made wood laminate flooring from Lumber Liquidators exhibited illegally high levels of formaldehyde. While in contrast, the samples from Lowes, HomeDepot, and the non-Chinese-made flooring products from Lumber Liquidators passed the CARB test.

43.     These increased levels of formaldehyde were written off by Lumber Liquidators' CEO Tom Sullivan as a campaign started by over-zealous hedge fund managers that use improper testing methods. However, independent reports and many other samples have shown dangerously high levels of formaldehyde from the products at issue.

44.     Moreover, the CBS report revealed that 60 Minutes sent in undercover reporters to three mills in China that supply Lumber Liquidators with its laminate wood flooring. They recorded video of mill employees admitting to falsely labeling the laminate as CARB Phase 2 or CARB 2 to save on production cost – up to 10% savings on cost.

45.     60 Minutes' undercover investigators also reported that:

> Employees at the mills openly admitted that they used core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price. At all three mills they also admitted [to] falsely labeling the company's laminate flooring as CARB compliant.

46.     Lumber Liquidators currently offers a number of laminate wood flooring products that are manufactured out of Chinese mills. These products include, but are not limited to:

a.     8 mm Bristol County Cherry Laminate Flooring

b.     8 mm Dream Home Nirvana French Oak Laminate Flooring

c.   8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring

d.   12 mm Dream Home Ispiri Americas Mission Olive Laminate Flooring

e.   12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring

f.   12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring

g.   12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring

h.   12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring

i.   12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring

j.   12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring

k.   12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring

l.   12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10029601)

m.   12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10023958)

n.   12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring

o.   12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring

p.   12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring

q.   12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring

r.   12 mm Dream Home St. James African Mahogany Laminate Flooring

s.   12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring

t.   12 mm Dream Home St. James Brazilian Koa Laminate Flooring

u.   12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring

v.   12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring

w.   12 mm Dream Home St. James Golden Acacia Laminate Flooring

x.   12 mm Dream Home St. James Nantucket Beech Laminate Flooring

y.   12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring

z.   12 mm Dream Home St. James Vintner's Reserve Laminate Flooring

aa.  15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring

47.   Similar to the Lumber Liquidators product purchased and used by Plaintiffs, the products listed in Paragraph 45 above all state that they are "California 93120 Phase 2 Complaint for Formaldehyde," indicating that they meet and/or exceed CARB emission standards. However, reports and investigations have revealed that these representations are false and misleading.

48.   In response to these allegations, Lumber Liquidators has posted on its website's Health and Safety section that "These attacks are driven by a small group of short-selling investors who are working together for the sole purpose of making money by lowering our stock price. They are using any means to try and scare our customers with inaccurate allegations. Their motives and methods are wrong and we will fight these false attacks on all fronts." Further in defense of the company's Chinese mills, founder Tom Sullivan told CBS that they "have inspectors that

1    double-check them.  The mills are licensed by California - the Chinese mills we

2    deal with in the laminates are licensed by California."

3        49.     According to the CBS report, one hedge fund manager pointed out

4    that the Lumber Liquidators margins began exhibiting suspicious profit behavior

5    for a company involved in a cut-throat commodity business: doubling of its profits

6    against the competitive landscape in merely two years.

7        50.     This jump in profit margin was also scrutinized by a hedge fund

8    analyst in 2013.  The author of a *Seeking Alpha* article engaged an independent lab,

9    Berkeley Analytical, an IAS accredited testing laboratory to sample of Lumber

10    Liquidators' house brand, Mayflower, sold from a Southern California Lumber

11    Liquidator store.  The laboratory results revealed that the sample was more than

12    three and a half times the allowable legal level for formaldehyde.

13    **V.**

14    **CLASS ACTION ALLEGATIONS**

15        51.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and

16    23(b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of a

17    class defined as:

18
19            All persons and entities that reside in the State of
        California who purchased for personal use laminated
20            wood flooring from Lumber Liquidators, either directly
        or through an agent, that was sourced, processed, or
21            manufactured in China (the "Class").

22        52.     Plaintiffs do not assert claims in this action for personal injuries

23    caused by formaldehyde exposure through the Chinese Flooring in question here.

24    Rather, Plaintiffs, individually and on behalf of the other Class members, seek

25    solely economic and injunctive relief as a result of their purchase of Lumber

26    Liquidators' Chinese-made Laminate Flooring products.

27        53.     The members of the Class are so numerous that joinder of all

28    members would be impracticable.  The proposed Class likely includes tens of

thousands of members dispersed across California. The precise number of Class members can be ascertained through discovery, which will include records of Lumber Liquidators' sales, its warranty service, and other records and documents.

54.     There are common questions of law and fact that predominate over any questions affecting only individual Class members. These common legal and factual questions, include, but are not limited to:

a.   Whether Lumber Liquidators properly and adequately monitored their Chinese manufacturing plants to ensure CARB compliance;

b.   Whether Lumber Liquidators' laminate wood flooring products that were manufactured in China and sold in California exceed the CARB limit;

c.   Whether Lumber Liquidators falsely labeled and advertised its Chinese manufactured laminate wood flooring products as being CARB compliant;

d.   Whether any false representations regarding CARB compliance were made knowingly and willfully;

e.   Whether Lumber Liquidators concealed and omitted material facts from its communications with and disclosure to all class members regarding the levels of formaldehyde in its laminate wood flooring products;

f.   Whether Lumber Liquidators breached express warranties to class members regarding its laminate wood flooring products pursuant to California Commercial Code § 2313;

g.   Whether Lumber Liquidators' misrepresentations or omissions constitute unfair or deceptive practices under the California Unfair Competition Law ("UCL");

h.   Whether Lumber Liquidators' representations that its Chinese manufactured laminate wood flooring products are CARB compliant violate the California False Advertising Law ("FAL");

i.   Whether Lumber Liquidators' conduct entitles class members to injunctive relief under the Consumer Legal Remedies Act ("CLRA");

ii.   Whether Lumber Liquidators has created a public nuisance;

j.   Whether the above practices caused Class members to suffer injury; and

k.   The proper measure of damages and the appropriate injunctive relief.

55.   Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs and each of the other Class members were exposed to the same uniform misconduct and have been injured by the same wrongful practices of Lumber Liquidators.

56.   Plaintiffs' claims arise from the same practices and course of conduct that give rise to the other Class members' claims and are based on the same legal theories.  Plaintiffs will fully and adequately assert and protect the interests of the other Class members.  In addition, Plaintiffs have retained class counsel who are experienced and qualified in prosecuting class action cases similar to this one. Neither Plaintiffs nor their attorneys have any interests contrary to or conflicting with other Class members' interests.

57.   A class action is the superior method for the fair and efficient adjudication of Plaintiffs and the Class' claims against Lumber Liquidators since joinder of all of the members of the Class is impractical.  Also, the adjudication of the controversy through a class action will avoid the possibility of inconsistent and potentially conflicting results.  Given the similarity of the facts and claims at issue, there will be no difficulty in the management of this action as a class action.

# VI.

# STATUTE OF LIMITATIONS

## A.     Fraudulent Concealment Tolling

58.     Upon information and belief, Lumber Liquidators has known that its models of laminate flooring do not meet California's CARB emission standards for formaldehyde since at least January 1, 2009, if not earlier, and has concealed from and failed to notify Plaintiffs, Class Members, and the public of the true formaldehyde emission levels from its laminate flooring.  Any applicable statutes of limitation have been tolled by Lumber Liquidators' knowing, active, ongoing concealment and denial of the facts as alleged herein.  Plaintiffs and the California Class have been kept ignorant by Lumber Liquidators of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs and members of the California Class could not reasonably have discovered that Lumber Liquidator's laminate flooring uniformly fails to comply with California's CARB emission standards for formaldehyde.

## B.     Estoppel

59.     Lumber Liquidators was and is under a continuous duty to disclose to Plaintiffs and the Class the true character, quality, and nature of its laminate flooring. Lumber Liquidators knowingly and affirmatively misrepresented and actively concealed the true character, quality, and said laminate flooring. Plaintiff reasonably relied upon Lumber Liquidators' knowing and affirmative misrepresentations and/or active concealment. Based on the foregoing, Lumber Liquidators is estopped from relying on any statutes of limitation in defense of this action.

## C.     Discovery Rule

60.     The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered their laminate flooring from Lumber Liquidators failed

to comply with California's CARB standards for formaldehyde emissions. However, Plaintiffs and Class Members had no realistic ability to discern the Lumber Liquidators laminate flooring they purchased was defective until—at the earliest—independent testing verified that such flooring does not comply with CARB standards for formaldehyde.  Not only did Lumber Liquidators fail to notify Plaintiffs or Class Members about its laminate flooring non-compliance with the CARB limit, Lumber Liquidators denied and continues to deny that its laminate flooring fails to comply with the CARB limit. Thus Plaintiffs and Class Members were not reasonably able to discover the laminate flooring's non-compliance until after they had purchased the laminate flooring, despite their exercise of due diligence, and their causes of action did not accrue until they discovered that their laminate flooring emitted formaldehyde at levels greater than the CARB limit.

## VII.

## CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

## <u>VIOLATION OF THE MAGNUSON-MOSS WARRANTY</u>
ACT, 15 U.S.C. §§ 2301, *ET SEQ;*

61.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

62.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

63.     Plaintiffs and the other members of the class are "consumers" within the meaning of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301(3).

64.     Lumber Liquidators is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4) – (5).

65.     Lumber Liquidators flooring that was purchased separate from the initial construction of the structure into which it was to be installed constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

66.     Lumber Liquidators' express warranties and written affirmations of fact regarding the nature of the flooring, i.e., that the flooring was in compliance with CARB formaldehyde standards, constitutes a written warranty within the meaning of 15 U.S.C. § 2301(6).

67.     Lumber liquidators breached their warranties by manufacturing, selling and/or distributing flooring products with levels of formaldehyde that exceed the CARB standards, or by making affirmative representations regarding CARB compliance without knowledge of its truth.

68.     Lumber Liquidators' breach deprived Plaintiffs and the other Class members of the benefit of their bargains.

69.     The amount in controversy of Plaintiffs' individual claims exceeds the value of $25.  In addition, the amount in controversy exceeds the value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this action.

70.     Defendant has been notified of its breach of written warranties and has failed to adequately cure those breaches.  As a direct and proximate result of Defendant's breaches of its written warranties, Plaintiffs and the other Class members sustained damages in amounts to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ;*

71.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

72.     California Business and Professions Code § 17200, et seq. prohibits "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §§17200, 17203.

73.     Throughout the Class Period, Defendant engaged in unlawful business acts and/or practices by selling and/or distributing laminate wood flooring products

in California that exceed the CARB limit for formaldehyde emissions from composite wood products set forth in Title 17 of the California Code of Regulations, § 93120 –93120.12 *et seq*., specifically "Phase 2," which mandates the maximum levels of formaldehyde that laminate flooring products can emit.

74.    Throughout the Class Period, Defendant engaged in unlawful business acts and/or practices by selling and/or distributing laminate wood flooring products in California that exceed the CARB limit for formaldehyde emissions from composite wood products set forth in Title 17 of the California Code of Regulations, § 93120 – 93120.12 *et seq*., specifically "Phase 2," which mandates the maximum levels of formaldehyde that laminate flooring products can emit.

75.    Defendant's deceptive statements detailed above further violate California Health and Safety Code §25249.6 (Proposition 65), which requires products emitting formaldehyde at levels above 40 micrograms per day to contain a health hazard warning.

76.    Defendant further engaged in unlawful business acts and/or practices by not informing consumers that Defendant's Chinese-made laminate wood flooring products sold in California emit formaldehyde at levels that exceed the formaldehyde emission limit set forth in the CARB standards.  These actions were misleading and deceptive, and violated the False Advertising Law, California Business & Professions Code §§ 17500, *et seq*. and the Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq*.

77.    Throughout the Class Period, Defendant engaged in unlawful business acts and/or practices by making untrue, deceptive, or misleading environmental marketing claims on the labels of its Chinese-made laminate wood flooring products' packaging and on promotional materials including pages of the Lumber Liquidators' website, in violation of California's "Greenwashing" Statute, Cal. Bus. & Prof. Code § 17580.5.  Such claims include, but are not limited to: overstating the environmental attributes of the laminate wood flooring products it

distributes in California, failing to substantiate that the laminate wood flooring products it distributes in California have received third-party certification of CARB compliance, and misrepresenting explicitly or through implication that the laminate wood flooring Defendant distributes in California is non-toxic. *See* Cal. Bus. & Prof. Code § 17580.5(a).

78.   Throughout the Class Period, Defendant has engaged in unlawful business acts and/or practices by expressly warranting on every package of laminate wood flooring products it distributes and sells in California, as well as in promotional materials and product invoices, that the products comply with CARB formaldehyde standards and all other applicable laws and regulations when they do not.  This express warranty also appears on Defendant's website, and product invoices and instruction materials.  Defendant's breach of this express warranty violates California state warranty law, California Commercial Code § 2313.

79.   The acts, omissions, and practices alleged herein also constitute unfair business acts and practices in that Defendant's conduct is immoral, unscrupulous, and offends public policy by seeking to profit from Chinese-made laminate flooring products that emit dangerous levels of formaldehyde in violation of California law.

80.   The acts, omissions, and practices alleged herein also constitute fraudulent business acts and practices in that Defendant's representations regarding its compliance with CARB emission standards, regarding its measures to ensure CARB compliance by its Chinese manufacturers, and regarding the safety and quality of its laminate flooring are false, misleading, and are likely to deceive California customers.

81.   Plaintiffs relied on Defendant's misrepresentations.  As a direct result of Defendant's unlawful, unfair, or fraudulent business acts and/or practices, Plaintiffs and Class Members suffered injury in fact and lost money or property.

82.     Defendant profited from its sales of its falsely and deceptively advertised products to unwary California customers.

83.     Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution, injunctive relief against Defendant in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

## THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500, ET SEQ.

84.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

85.     Throughout the Class Period, Defendant engaged in unlawful and/or fraudulent conduct under California Business & Professions Code §§ 17500, *et seq*. ("the False Advertising Law"), by engaging in the sale of Chinese-made laminate wood flooring products, and publically disseminating various advertisements that Defendant knew or reasonably should have known were untrue and misleading.  Defendant committed such violations of the False Advertising Law with actual knowledge or knowledge fairly implied on the basis of objective circumstances.

86.     Defendant's advertisements, representations, and labeling as described herein were designed to, and did, result in the purchase and use of the Chinese-made laminate flooring products and Defendant profited from its sales of these products to unwary consumers.

87.     Plaintiffs reasonably relied on Defendant's representations made in violation of California Business and Professions Code §§ 17500, *et seq*.

88.     As a direct result of Defendant's violations, Plaintiffs suffered injury in fact and lost money.

89. Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution and injunctive relief against Defendant in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750 *ET SEQ.***

90. Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

91. Defendant is a "person" within the meaning of California Civil Code §§ 1761(c) and 1770, and provides "goods" within the meaning of Civil Code §§ 1761(a) and 1770. Defendant's customers, including Plaintiffs and Class members, are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770. Each purchase of Defendant's Chinese-made laminate wood flooring products by Plaintiffs and each Class member constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

92. Each class member purchased goods from Defendant that was primarily for personal, family, or household purposes.

93. The Consumer Legal Remedies Act makes it unlawful for a company to:

    a. Misrepresent the certification of goods. Cal. Civ. Code § 1770(a)(2)(3);

    b. Represent that goods have characteristics or approval which they do not have. Cal. Civ. Code § 1770(a)(5);

    c. Represent that goods are of a particular standard, quality, or grade, if they are of another. Cal. Civ. Code § 1770(a)(7);

    d. Advertise goods with intent not to sell them as advertised. Cal. Civ. Code § 1770(a)(9).

e.     Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not. Cal. Civ. Code § 1770(a)(16).

94.    Throughout the Class Period, Defendant violated and continues to violate the above mentioned provisions.

95.    As a direct and proximate result of Defendant's violations, Plaintiffs and Class Members have suffered and are continuing to suffer irreparable harm.

96.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the California Consumer Legal Remedies Act because Defendant is still representing that the flooring products have characteristics and qualifications which are false and misleading, and has injured Plaintiffs and Class Members.

97.    In accordance with Civil Code § 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for Lumber Liquidators' violations of the CLRA.  In addition, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) and (d), Plaintiffs will amend this Class Action Complaint to include a request for damages.  Plaintiffs and members of the Class request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code §1780 and the Prayer for Relief.

# FIFTH CAUSE OF ACTION

# BREACH OF EXPRESS WARRANTY, CAL. UNIFORM COM. CODE § 2313

98.    Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

99.    Throughout the Class Period, Lumber Liquidators has expressly warranted that its laminate wood flooring products comply with CARB formaldehyde standards and all other applicable laws and regulations.

100.    Defendant's express warranty that its laminate wood flooring products comply with the CARB standards appears on every package of laminate wood flooring Defendant sells or has sold in California, including those sold to Plaintiffs and all Class Members. This express warranty also appears on Defendant's website, and product invoices and instruction materials.

101.    Lumber Liquidators' warranties became part of the basis of the bargain in selling laminate wood flooring products to Plaintiffs and Class Members.

102.    Lumber Liquidators breached these express warranties by selling, and/or distributing the laminate wood flooring products, which fail to comply with the CARB standards.

103.    Plaintiffs and members of the Class paid money for the laminate wood flooring and paid to have the flooring installed in their homes, work, and other spaces.  However, Plaintiffs and the members of the Class did not obtain the full value of the advertised products. If Plaintiffs and other members of the Class had known the true nature of the flooring products, that they emitted unlawful levels of a cancer-causing chemical, they would not have purchased the laminate wood flooring products.

104.    As a result of this breach, Plaintiffs and the members of the Class suffered injury and deserve to be compensated for the damages they suffered.

105.   Plaintiffs and the Class are therefore entitled to recover compensatory damages, declaratory relief, and other relief as specifically prayed for herein.

## SIXTH CAUSE OF ACTION

## PUBLIC NUISANCE

106.   Plaintiffs incorporate by reference the foregoing allegations as if set fully herein.

107.   Plaintiffs and all other similarly situated customers have a common right to be free from the detrimental effects of formaldehyde in, on and around their homes.

108.   Lumber Liquidators, by reason of its failure to exercise due care in its manufacturing, marketing, and sale of Chinese-made Laminate wood flooring, has created a condition whereby unsafe levels of formaldehyde are now present in, on and/or around tens of thousands of homes in California, including specifically the home Plaintiffs reside in.

109.   The widespread presence of Lumber Liquidators' Chinese-made laminate wood flooring in homes throughout California, including within Plaintiffs' home, is injurious to the health of the public so as to substantially and unreasonable interfere with the comfortable enjoyment of life and/or property.

110.   The widespread presence of Lumber Liquidators' Chinese-made laminate wood flooring in homes throughout California causes significant harm and its social utility is outweighed by the gravity of the harm inflicted.

111.   The widespread presence of Lumber Liquidators' Chinese-made laminate wood flooring in homes throughout California constitutes a nuisance pursuant to California Civil Code section 3479.

112.   The widespread presence of Lumber Liquidators' Chinese-made laminate wood flooring in homes throughout California affects and/or interferes with an entire community's and/or a considerable number of persons' right to health, safety, peace, comfort, and convenience in the State of California, thereby

constituting a public nuisance pursuant to California Civil Code section 3480. Moreover, Lumber Liquidators' conduct as described herein has adversely affected Plaintiffs' private right to the free use and enjoyment of their property.

113.   Defendant is liable in public nuisance in that it created and/or contributed to the creation of and/or assisted in the creation of and/or were a substantial contributing factor in the creation of the public nuisance described herein through the conduct described in this cause of action and elsewhere throughout the complaint, including, but not limited to:

a.  The widespread promotion and marketing of Chinese-made laminate wood flooring products for use in homes;

b.  Failing to warn the public about the elevated levels of formaldehyde that are released from Lumber Liquidators' Chinese-made laminate wood flooring; and

c.  Systematically selling, promoting, manufacturing, and/or distributing Chinese-made laminate wood flooring in homes throughout California despite knowing that its products contained elevated levels of formaldehyde that would be released into the home environment thereby exposing Plaintiffs and members of the Class to a highly toxic chemical;

114.   As a direct and proximate cause of Defendant's conduct, unsafe levels of formaldehyde is present in, on and around large numbers of homes throughout the State of California.

115.   The widespread presence of Lumber Liquidators' Chinese-made laminate wood flooring in homes throughout California releases or off-gasses formaldehyde which contaminates and/or will contaminate these homes, including the home of Plaintiffs.

116.   As a direct and proximate result of Defendant's conduct, large numbers of people throughout the State of California, including Plaintiffs, have

been exposed and/or are being exposed to elevated levels of formaldehyde released from Lumber Liquidators' Chinese-made laminate wood flooring in homes throughout California, thereby affecting their health, safety, and welfare.

117.    Defendant's actions are a direct and legal cause of the public nuisance.

118.    Plaintiffs and the Class have an ascertainable right to have the public nuisance created by Defendant abated from their homes and property so affected.

119.    The abatement of the nuisance described herein is a remedy unique to the public nuisance cause of action.

120.    Plaintiffs and the Class pray for relief as set forth below.

<u>**SEVENTH CAUSE OF ACTION**</u>
<u>**DECLARATORY RELIEF**</u>

121.    Plaintiffs incorporate by reference the foregoing allegations as if set fully herein.

122.    Plaintiffs, on behalf of themselves and all others similarly situated, contend that Defendant's sale of laminate wood flooring products in California do not comply with the CARB standards. On information and belief, Defendant contends that its sale of laminate wood flooring products in California complies with the CARB standards.

123.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

A.   Certification of this action as a class action and appointment of Plaintiffs as the Class representatives and the undersigned counsel as Class counsel;

B.  An Order declaring that Defendants' conduct has violated Title 17 of the California Code Regulations, §§ 93120-93120.12;

C.  An Order awarding Plaintiffs and National Class members injunctive relief, declaratory relief, statutory damages, and punitive damages against Defendants as provided in California Business and Professions Code, §§ 17202 and 17203, and California Civil Code § 1780;

D.  An Order declaring the actions complained of herein to be in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq.;

E.  Restitution of all money and/or property that Plaintiffs and Class Members provided to Defendant for the purchase and installation of Defendant's laminate wood flooring products that were sold in violation of Title 17 of the California Code Regulations, §§ 93120-93120.12 and California Business and Professions Code § 17200 et seq.;

F.  An Order awarding Plaintiffs and Class members restitution and disgorgement of Defendants' profits;

G.  An order for the abatement of the public nuisance that presently exists in the homes of Plaintiffs and members of the Class due to the widespread presence of Lumber Liquidators' Chinese-made laminate wood flooring.

H.  Pre and post-judgment interest;

I.   Reasonable attorneys' fees and costs; and

J.   For such other and further relief as this Court finds just and proper.

# DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial on all issues so triable.

DATED:  March 17, 2015          **COTCHETT, PITRE & McCARTHY, LLP**

_____
/s/ Matthew K. Edling
MATTHEW K. EDLING

MATTHEW K. EDLING (SBN 250940)
medling@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiffs Lisa Deutsch and*
*Jamie Deutsch, individually and on behalf of*
*all others similarly situated*